# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| KIM KIMBERLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | NO. 2:16-CV-494 |
| HORIZON FINANCIAL ) | |
| MANAGEMENT, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Count II of Plaintiff's Complaint, filed by the defendant, Horizon Financial Management, on January 31, 2017. (DE #12.) For the reasons set forth below, the motion is **GRANTED**. Count II of the complaint is hereby **DISMISSED**. All other counts **REMAIN PENDING**.

BACKGROUND

The plaintiff, Kim Kimberly ("Kimberly"), filed her complaint against the defendant, Horizon Financial Management ("Horizon"), on November 29, 2016. (DE #1.) In it, she brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII") and 42 U.S.C. § 1981 of the Civil

-1-

Rights Act of 1866, *et seq.* ("Section 1981"). The complaint alleges religious discrimination under Title VII (Count I), retaliation based on religious discrimination under Title VII (Count II), racial discrimination and retaliation under Section 1981 (Count III), retaliation under Section 1981 (Count IV), and intentional infliction of mental and emotional distress (Count V). On January 31, 2017, Horizon filed the instant partial motion to dismiss, arguing that the retaliation claim in Count II falls outside of the scope of her underlying administrative charge and should be dismissed. (DE #13.) Kimberly filed her response on March 1, 2017. (DE #19.) Horizon filed a reply on March 17, 2017. (DE #22.) The motion is ripe for adjudication.

DISCUSSION

Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[1] a court must accept all facts alleged in the

---

[1] The failure to exhaust administrative remedies is generally considered an affirmative defense. See *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). The proper vehicle for moving for dismissal based on an affirmative defense is a motion for judgment on the pleadings via Federal Rule of Civil Procedure 12(c) rather than 12(b)(6). *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). That said, because the practical effect is the same, and there is sufficient information before the Court to make a determination on the issue pursuant to Rule 12(c) without changing the analysis, the defense may be appropriately considered by the Court at this stage. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); see also *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n. 1 (7th Cir. 2012) ("Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint."). The Court notes that "[a] motion

complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citation omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Extraneous Materials

The parties have submitted several documents for the Court to consider when ruling on the motion to dismiss. Horizon has submitted Kimberly's Charge of Discrimination filed with the Indiana Civil Rights Commission ("ICRC") and the Equal Employment

---

under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12." *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993).

Opportunity Commission ("EEOC")[2] (the "Charge" or the "Charge of Discrimination"). (DE #13-1.) Kimberly has submitted her own affidavit ("Kimberly Affidavit"), a letter she sent to the EEOC dated September 24, 2016 ("Letter"), and the affidavit of her co-worker, Tykeyia Harmon ("Harmon Affidavit"). (DE #19-1 & DE #19-2.) Only the Charge of Discrimination is directly referenced, albeit not by name, in the complaint. (See DE #1, p. 2.)

When reviewing a motion to dismiss, a court normally considers only the factual allegations of the complaint and any reasonable inferences that can be drawn from those allegations. See *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). A court may also examine "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745, n. 1 (7th Cir. 2012) (collecting cases); see also *Adams v. City of Indianapolis,* 742 F.3d 720, 729 (7th Cir. 2014) (court may examine information from documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim"). Such documents may be considered by the court without converting the motion to dismiss into a motion for summary judgment; however, if

---

[2] "[T]he EEOC and the ICRC have a 'Worksharing Agreement,' under which the EEOC and the ICRC have designated each other as agents for the purpose of receiving charges." *M.C. Welding and Machining Co., Inc. v. Kotwa*, 845 N.E.2d 188, 192, n. 3 (Ind. App. 2006).

-4-

a moving party relies on materials other than the narrow exceptions noted above, the motion must be converted. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013); *Geinosky*, 675 F.3d at 745, n. 1.

Horizon devotes a section of its brief to arguing why the Court should consider the Charge of Discrimination. (DE #13, pp. 3-4.) Kimberly does not respond to Horizon's argument, and, indeed, it is without question that the Charge of Discrimination may be properly considered for purposes of the instant motion without converting it to one for summary judgment. See *Adams*, 742 F.3d at 729. Kimberly, on the other hand, simply submits her additional documents without analysis as to why they should similarly be considered. Horizon replies that, even if considered, Kimberly's extraneous documents do not show that the retaliation claim was within the scope of the Charge.

While it is true that the Kimberly Affidavit, the Letter, and the Harmon Affidavit are not referenced in the complaint, the Seventh Circuit Court of Appeals has recognized that a plaintiff *responding* to a motion to dismiss is granted more flexibility than a movant in terms of relying on extraneous materials to support her position. See *Geinosky*, 675 F.3d at 745, n. 1 (to ward off dismissal, a plaintiff "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"). Furthermore, because consideration of these documents would not

change the result, the Court will consider them but declines to convert the motion to dismiss into a motion for summary judgment. See *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming district court's refusal to convert a motion to dismiss into a motion for summary judgment based on district court's discretion).

Facts

Kimberly, an African American female who practices the faith of Jehovah's Witness, was hired by Horizon in August of 2012 and was promoted to Floor Supervisor approximately two years later by Graciela Biancardi ("Biancardi"). (DE #1, pp. 1-2.) At the time of the promotion, Biancardi was aware that Kimberly was a Jehovah's Witness. (*Id*. at 2.) In November of 2014, Biancardi allegedly began to harass Kimberly on the basis of her religion in that Biancardi asked her to decorate the company Christmas tree and participate in the "ugly sweater" contest. (*Id*. at 2-3.) Kimberly refused to participate and subsequently provided Biancardi with information regarding the Jehovah's Witness faith "in an effort to educate her and to avoid future conflicts." (*Id*. at 3.) In September of 2015, while Kimberly was present, Biancardi asked several employees if they were going to dress up for Halloween. (*Id*.) When Kimberly's non-Jehovah's Witness co-worker, Tykeyia Harmon ("Harmon"), refused to dress up for Halloween, Biancardi

told her not to be afraid of "Sister Kim." (*Id.*) Biancardi would allegedly "follow her and force herself on Kimberly during her walks while on break and would force her to talk about religion." (*Id.*)

On or around September 23, 2015, Kimberly received a performance evaluation, and Biancardi rated her performance lower than previous evaluations. (*Id.*) Kimberly asked the human resource director, Gina Brainard ("Brainard"), for an explanation as to why the performance evaluation was lower, but Brainard did not respond. (*Id.*) On October 6, 2015, Kimberly complained to Horizon's director of operations, Sandy Szczerbowski ("Szczerbowski"), about Biancardi's treatment of her with regard to her religious beliefs, and Biancardi terminated her the next day for allegedly "calling another employee 'ghetto' and for allegedly making derogatory remarks about other employee's religion." (*Id.* at 3-4.)

On October 20, 2015, Kimberly filed her Charge of Discrimination with the ICRC and EEOC.[3] The Charge, which has the box for religious discrimination checked off, provides in full:

> I am a Jehovah Witness. I was hired on 8/27/2012. In October 2014, Mgr. Grace Biancardi promoted me to Floor Supervisor. Because Grace enjoys celebrating holidays, prior to accepting the promotion I reminded her that I did not celebrate holidays. Grace

---
[3] As noted above, the Worksharing Agreement between the ICRC and the EEOC provides that the same Charge applies to both agencies even if it is only filed with one.

> said it didn't matter because we connected with the work and that is what matters. My performance and attendance was good.
>
> In Nov 2014, as the holidays approached, Grace asked me to help decorate the tree. I told her that I didn't celebrate. She told me that I don't have to participate, just help.
>
> In Dec 2014, Grace wanted me to pick someone to win the 'Ugly Sweater' contest. I didn't know what it meant. I was told it was related to Christmas and refused to participate. Grace wanted me to celebrate birthdays. I offered her information to [sic] so that she could understand my religion and she accepted.
>
> On 9/18/15, as the holidays approach [sic] Grace began harassing me again. She made and [sic] announcement that she had asked Sandy if we could dress up for Halloween. Team-Lead Tykeyia Harmon did not want to dress up because of her religion. Grace told her not to be afraid of me.
>
> On 9/23/15, I received my evaluation and my ratings had dropped. I asked why, but the Company did not respond.
>
> On 10/7/2015 I was terminated for calling an employee 'ghetto' and for alleged derogatory comments about people's religions.
>
> I believe that I have been discriminated against due to my religion, in violation of the of [sic] Title VII of the Civil Rights Act of 1964, as amended.

(DE #13-1.) The Charge was signed by Kimberly on the date it was filed. (*Id*.) On August 29, 2016, after an investigation of the Charge, the EEOC issued Kimberly a right to sue letter, which she received on August 31, 2016. (DE #1, p. 2.) In response, Kimberly sent a Letter to the EEOC on September 24, 2016, in which she

-8-

provided additional details in support of her position and asked that the case be reopened. (DE #19-1, p. 4.) No further action was taken by the EEOC, and the complaint was filed with this Court on November 29, 2016. (DE #1.)

Horizon filed its motion to dismiss on January 31, 2017. (DE #12.) In it, Horizon argues that the religious retaliation claim in Count II must be dismissed because it is not within the scope of the original Charge. (DE #13.) Kimberly responds by arguing that she failed to specifically mention the retaliation claim in the Charge because she received incorrect guidance from an EEOC investigator, and she also argues that the Charge, as it was written, is "reasonably related" to all of the allegations in her complaint. (DE #19.) In affidavits attached to the motion to dismiss, both Kimberly and Harmon attest that the EEOC investigator who took their initial statements informed them that they could only file a charge based on one factor and could not include multiple issues.[4] (DE #19-1, p. 1 & DE #19-2, p. 2.) Kimberly states that, nonetheless, she informed the investigator that she "believed that [her] termination was due to [her] race and was in retaliation for . . . complaining about religious and racial discrimination," and she "signed the [C]harge even though it didn't include religious based retaliation" because of the aforementioned

---

[4] Kimberly and Harmon attest that they drove to Indianapolis together on October 20, 2015, and spoke separately with the same investigator. (DE #19-1, p. 1 & DE #19-2, p. 1.)

representations of the investigator. (DE #19-1, pp. 1-2.) Kimberly also states that, after the Charge was dismissed, she sent the Letter to the EEOC in an attempt to appeal the dismissal; in it, she reiterated her belief that her termination was in direct response to the complaint she made to Szczerbowski about Biancardi's behavior. (*Id.* at 2, 4.)

Failure to Exhaust

A plaintiff must file a charge with the EEOC prior to filing suit under Title VII. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994). In order to "prevent circumvention of the EEOC's investigatory and conciliatory role, only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit." *Id.* In general, "[a] plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (citation omitted). The Seventh Circuit has articulated a two part test to determine whether such claims may proceed: (1) the claim must be like or reasonably related to the EEOC charges; and (2) the claim could reasonably develop from the EEOC's investigation of the original charges. *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167

(7th Cir. 1976)). As to the first prong, "[c]laims are reasonably related if there is a factual relationship between them. At a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (internal citation omitted); see also *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). As to the second prong, the Seventh Circuit has recognized the difficulty of applying it because speculation is often required; however, courts need not analyze the second prong when the first part of the test is not satisfied. *Cheek*, 31 F.3d at 500.

Even giving her the benefits to which she is entitled at this stage, Kimberly's retaliation claim does not clear the first hurdle. In general, claims of one form of discrimination cannot automatically be substituted for another, even if they are based on the same protected classification. See *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."); see also *Cheek*, 31 F.3d at 503 ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). It is only reasonable to link those distinct claims when they are "so

-11-

related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Sitar*, 344 F.3d at 726 (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)).

Here, while Kimberly asserts that the allegations in the Charge are directly related to the allegations in her complaint, she provides no specifics under relevant Seventh Circuit case law to back up her argument.[5] The reality is that Kimberly's Charge of Discrimination is simple and uncomplicated: she alleges that she was discriminated against based on her religion when Biancardi repeatedly harassed her by attempting to involve her in holiday activities despite being aware of Kimberly's religious beliefs prohibiting such involvement. She further alleges that Biancardi subsequently gave her a lower performance rating on her evaluation because of those beliefs and eventually terminated her for calling another employee 'ghetto' and for making derogatory comments about others' religions. In contrast, Count II of her complaint specifically alleges that, when Kimberly became "fed up," she complained to Szczerbowski about Biancardi's religious harassment and was terminated one day later because she had engaged in that

---

[5] The Court notes that, in her brief, Kimberly cites to Fifth Circuit and First Circuit cases seeming to suggest that the two-pronged test outlined above need not be analyzed. However, because there is a dearth of Seventh Circuit case law on the issue, the Court declines to look to other circuits for guidance.

protected activity.  The Charge does not mention Szczerbowski by name, nor does it make even a passing reference to the fact that Kimberly allegedly complained of Biancardi's harassment to anyone else within the company.  While Biancardi is implicated in both the Charge and the complaint, Szczerbowski is not; more importantly, the conduct relevant to the retaliation claim (i.e. complaining of the harassment to Szczerbowski or another supervisor) is missing entirely from the Charge.  Kimberly could have, and indeed should have, included some mention of such conduct in her Charge of Discrimination if she intended the retaliation claim to be pursued.  Without it, it is not reasonable to infer that her termination was in retaliation for complaining to Szczerbowski as is alleged in Count II, even though there is some overlap with regard to Biancardi.  See *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 526 (7th Cir. 2008) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) with approval and noting that, even when the parties involved are the same, a plaintiff cannot use conclusory statements of discrimination to open the door to related theories of discrimination based on "whatever facts or legal theory she may later decide upon").

Kimberly argues that she should be given leeway because she was unrepresented by an attorney at the time she filed her Charge and was given incorrect information by the EEOC investigator.  However, this argument has been rejected by the Seventh Circuit

Court of Appeals. In *Vela v. Village of Sauk Village*, 218 F.3d 661 (7th Cir. 2000), the plaintiff argued that she had "orally informed the intake officer of the facts of her claim of sexual harassment, and that in directing her to cross out the reference to harassment on her intake form and by omitting the claim of harassment when he typed the charge, he misled her." *Id*. at 665. The Seventh Circuit held that "an oral charge, if made as she testified, not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of sexual harassment in her civil action." *Id*. Because Title VII requires that charges be in writing under oath or affirmation, the court found that oral statements to an agency investigator were not adequate, as "notice of such a statement cannot be expected to reach the employer." *Id*. The same sound reasoning applies to this case. Additionally, while an unrepresented plaintiff may be granted leniency and does not need to include each and every fact that forms the basis of her complaint in her underlying charge, a plaintiff *is* obligated to provide enough information in the original charge for allegations in a later filed complaint to be construed as reasonably related to them. *Cheek,* 31 F.3d at 500, 502 (a plaintiff must describe the alleged discriminatory conduct "with some degree of specificity"). Language describing one type of discriminatory conduct does not automatically lead to the inclusion of additional discriminatory claims. Kimberly's Charge

simply does not provide any mention of conduct relevant to a retaliation claim. See *Sitar*, 344 F.3d at 726-27.

Finally, Kimberly has submitted the Letter she sent to the EEOC, nearly a year after her original Charge was filed, as further proof that the retaliation claim is within the scope of the Charge. While it is possible that such evidence may sometimes be considered an amendment to the original EEOC charge within the meaning of 29 C.F.R. § 1601.12(b), this in only true where the information clarifies or amplifies the original allegations. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994). As set forth in detail above, the conduct described in the Letter with regard to Kimberly's reporting of Biancardi to Szczerbowski is not reasonably related to the claims presented in the Charge of Discrimination, so it may not be used to expand the scope of that Charge. See *Id*. at 502-503.

Thus, reading Kimberly's Charge of Discrimination liberally, it can only fairly be said that she complained to the ICRC/EEOC of discriminatory harassment and discharge based on her religion. To determine otherwise would thwart the goal of giving an employer fair warning of its employees' conduct at issue and providing the employer with an opportunity to reconcile the situation without resorting to the courts. See e.g. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). As such, the retaliation claim found in Count II must be dismissed.

CONCLUSION

For the reasons set forth above, the motion to dismiss (DE #12) is **GRANTED**.  Count II of the complaint is hereby **DISMISSED**.  All other counts **REMAIN PENDING**.

DATE: **November 28, 2017**        /s/RUDY LOZANO
                                   **United States District Court**